UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HERMANN BUSS KG MS
"ELBE TRADER" GMBH & CO.,

08 Civ. 5309 (GBD)(AJP)

                                        Plaintiff,

                    - against -

**VERIFIED COMPLAINT
AND RULE B ATTACHMENT**

T.S. LINES LTD.,

                                        Defendant.
------------------------------------------------------------X

Plaintiff HERMANN BUSS KG MS "ELBE TRADER" GMBH & CO. ("HERMANN

BUSS") by its attorneys, CONDON & FORSYTH, LLP, as and for its Verified Complaint against

Defendant T.S. LINES LTD. ("T.S. LINES") alleges upon information and belief, as follows:

     1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 U.S.C. § 1333.  Jurisdiction is also proper pursuant to the

Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.

     2.     Venue is proper under 28 U.S.C. § 1391 (d) because Defendant T.S. LINES is an

alien.

     3.     Plaintiff, HERMANN BUSS, was and is now a corporation organized and existing

under the laws of a foreign country, with its principal place of business located in Leer, Germany, who

was and now is the disponent owner of the M/V ELBE TRADER, a/k/a the M/V T.S. MANILA, a

general merchant vessel in the carriage of goods for hire.

     4.     Upon information and belief, Defendant T.S. LINES LTD. ("T.S. LINES") is a

corporation organized and existing under the laws of a foreign country, with its principal place of

business located in Hong Kong.

### AS FOR A FIRST CAUSE OF ACTION FOR
### BREACH OF CONTRACT AGAINST DEFENDANT

5.      On April 19, 2007, T.S. LINES entered into a time charter with HERMANN BUSS, through its agent PETER DOEHLE SCHIFFARTS-KG, for the charter of the M/V ELBE TRADER, which was to be later renamed the T.S. MANILA. The terms of the charter, including all addendums and riders, are plead herein as if copied *in extenso* and are attached as "Exhibit A".

6.      The charter period was to last, at minimum, until 15 September 2008, and at maximum, until 15 October 2008.

7.      Pursuant to the terms of the charter, and upon redelivery of the vessel to HERMANN BUSS, total charter hire payments were due to HERMANN BUSS from T.S. LINES in the amount of $361,071.02.

8.      Although HERMANN BUSS fulfilled all of its duties under the charter, T.S.LINES has failed to do so, resulting in damages which, despite amicable demand, T.S. LINES refuses to pay or otherwise secure HERMANN BUSS' claims.

9.      As a result of T.S. LINES, breach of charter, HERMANN BUSS has suffered and will continue to suffer damages in the sum of $361,071.02, as best as can now be estimated, exclusive of interest, attorneys' fees and all other equitable relief this Court deems fit to provide.

10.      According to the Rider Clause 51 of the charter party, disputes arising from the charter shall be referred to arbitration in London, with English law to apply.

11.      Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, HERMANN BUSS expects to recover the following amounts:

2

| A. | On the principal claim | $361,071.02 |
|---|---|---|
| B. | 2 years compounded interest at 5% per annum | $37,009.77 |
| C. | Arbitrator's fees and expenses | $50,000.00 |
| D. | Attorney's fees and expenses | $100,000.00 |
| | **Total** | **$548,080.79** |

## APPLICATION FOR ISSUANCE OF
## A RULE B ATTACHMENT

12.    Plaintiff repeats and re-alleges each and every one of the foregoing allegations as though fully set forth at length.

13.    With respect to T.S. LINES, this is a Complaint, *in personam*, with a prayer for process and maritime attachment and garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims And Asset Forfeiture Actions of the Federal Rules of Civil Procedure, to which HERMANN BUSS is entitled.

14.    After due investigation, T.S. LINES cannot be found within this District within the meaning of Rule B of the Supplemental Rules, and HERMANN BUSS has made a good faith effort to locate the Defendant in this District.  Upon information and belief, however, T.S. LINES has or will have during the pendency of this action assets, comprising, *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freight, sub-freights, charter hire and/or sub-charter hire, of belonging to, due or for the benefit of T.S. LINES, ("assets") including but not limited to assets at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein, within this District and subject to the jurisdiction of this Court in the hands of garnishees, including but not limited to the Bank of New York Company, Inc., HSBC (USA), Bank of America, Wachovia, Deutsche Bank, Calyon, BNP Paribas, Citibank, American Express Bank, J.P. Morgan Chase Bank National Association, UBS AG, Barclay's Bank, Credit Suisse, Bank of China, Bank of

Communications, Bank of East Asia, Mega International Commercial Bank Co. and/or Standard Chartered Bank, which assets are due and owing to HERMANN BUSS.

15.    HERMANN BUSS is not seeking this attachment for the purpose of injuring or harassing the Defendant.

16.    HERMANN BUSS will be prejudiced in its recovery against the Defendant absent a process of attachment.

17.    HERMANN BUSS seeks an Order from this Court directing the Clerk of Court to issue a Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of T.S. LINES, which may be found in this District, specifically those found and held by said garnishees, for the purposes of obtaining personal jurisdiction over T.S. LINES, and/or to secure its claim(s) in arbitration.

**WHEREFORE**, HERMANN BUSS KG MS "ELBE TRADER" GMBH & CO., prays:

A.    That due process according to the practice of this Court in admiralty jurisdiction be issued against the Defendant T.S. LINES LTD., citing it to appear and answer under oath all matters alleged;

B.    That since the Defendant cannot be found within this District, pursuant to Supplemental Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and as further requested in the attached Affidavit in Support of Prayer for Maritime Attachment, that this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment, attaching all tangible or intangible property in whatever form, including but not limited to cash, goods, chattels, credits, debts, wire transfers, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, bills of lading, effects, monies and debts, or any funds held by the aforementioned garnishees, including assets at, being transferred through, or being transferred and/or

wired to or from banking institutions or such other garnishees who may be served with a copy of the

Process of Attachment issued herein, including, but not limited to the Bank of New York Company,

Inc., HSBC (USA), Bank of America, Wachovia, Deutsche Bank, Calyon, BNP Paribas, Citibank,

American Express Bank, J.P. Morgan Chase Bank National Association, UBS AG, Barclay's Bank,

Credit Suisse, Bank of China, Bank of Communications, Bank of East Asia, Mega International

Commercial Bank Co. and/or Standard Chartered Bank, which are believed to be due and owing to

the Plaintiff in the amount of US $548,080.79 to satisfy and/or secure Plaintiff's claims, and that all

persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty

Rule B to answer the matters alleged in the Complaint;

That this Court maintain jurisdiction over this matter through the entry of judgment or award,

for any current claims, or those which may arise in the future, including any appeals; and

That judgment be granted in favor of Plaintiff and that this Court award any other equitable

relief that this Court deems fit, including costs, interest and reasonable attorneys' fees.

Dated: New York, New York
June 10, 2008

CONDON & FORSYTH LLP

*Attorneys for Plaintiff*

By: _____
Lili F. Beneda (LB 1879)
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 894-6778
Facsimile: (212) 597-6721

## **VERIFICATION**

Lili F. Beneda declares and states that she is an associate in the law firm of Condon & Forsyth, LLP, attorneys for plaintiff in this action, and that the foregoing Verified Complaint is true to the best of her information and belief; that the ground of her belief as to all matters not stated upon knowledge is information furnished to her to by Plaintiff and; that the reason why the Verification is not made by Plaintiff is that Plaintiff is a corporation none of whose officers or directors are present within the District.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on June 10, 2008

_____
Lili F. Beneda

# EXHIBIT "A"

 

Addendum No.1
To
Charter Party Dated April 19th, 2007
Between
Hermann Buss KG MS 'Elbe Trader' GmbH & Co.
c/o Peter Döhle Schiffahrts-KG, Hamburg, as Agent to Owners
(Hereinafter called the Owners)
And
T.S. Lines Limited
(Hereinafter called the Charterers)
In respect of the M/V " TS MANILA"  (the "Vessel")

**ORIGINAL -1ST**

In connection with the captioned Charter Party dated April 19th, 2007 between the Owners and the Charterers. The parties hereby mutually agree as following:

- Line 175 : add at end (after incorporated in this Charter Party)
  "General Clause Paramount to also form part in all bills of ladings issued thereunder."

All other terms and conditions in the captioned Charter Party shall remain in full force and unchanged.

IN WITNESS whereof the duly authorized officers for and on behalf of the parties have herein set their hands on this day June 25th, 2007.

The Owners,
Hermann Buss KG MS 'Elbe Trader' GmbH & Co.
c/o Peter Döhle Schiffahrts-KG, Hamburg, as Agent to Owners
For and on behalf of Owners
as per Authority
PETER DÖHLE
Schiffahrts-KG
as Agents only

The Original Charterers,
T.S. Lines Limited

**EXHIBIT**
**A**

# Time Charter |ORIGINAL| -2ND-

### GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

**This Charter Party,** made and concluded in ............ Taipei on ............ 19th ............ day of ...... April 2007 ............ 49 ...

Between Hermann Buss KG MS 'Elbe Trader' GmbH & Co.

c/o Peter Doehle Schiffahrts-KG, Hamburg as agent to Owners

Owners of the good ... full container ............ Steamship/Motorship Elbe Trader thr TS Manila - description see Clause 83 ............ of ......
of about 15,895GT –non-gross-register, and about 9,227 NT net-register, having engines of  sulzer 7 rta 58 62 u, mcr 15.540 kw/113 rpm

13.986 kw at 90 pct mcr indicated horse power

and with hull, machinery and equipment in a thoroughly efficient state, and classed g.l. + 100 a5 e containership, solas II-2 ,reg. 19 in nav-ac, +

me e aut

on ............ of about ............ cubic-feet-bale-capacity, and about ............ 22,525 metric ............ tons of 2240-lbs.

deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,

allowing a minimum of fifty tons) on a *design draft of 10.82 meters-feet* ............ inches on ............ Summer freeboard, inclusive of permanent bunkers,

which are of the capacity of about 1,600 TEU, Homogeneous container load about 1,124 TEU at 14 tons tons of fuel and capable of steaming

fully-laden, under good weather

conditions about 21 knots on a consumption of about 60.5 metric tons of IFO 380CST on design draft (See Clause 83) best Welsh coal—best grade

fuel oil—best grade Diesel oil,

now ............ trading ............ and ............ T.S. LINES LIMITED ............ Charterers of the City of ............ Hong Kong ............

**Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

about *a time charter period until minimum 15th September 2008 / maximum 15th October 2008, exact period in Charterers'*

*option* ............ within below mentioned trading limits.

Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

the fulfillment of this Charter Party. However, such relet must not result in any blacklisting or boycotting of the vessel or her Owners.

*Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.*

Vessel to be placed at the disposal of the Charterers, at on arrival first sea pilot station or in Owners option when where ready Hong Kong,

any time day and night, Sunday and holiday included. Owners shall give Charterers notice of vessel's delivery date. (See Clause

36)

in such dock, or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6) as

the Charterers may direct; if such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery shall to be

ready to receive cargo in ISO containers and/or flat racks with dry and with clean-swept holds and tight, staunch, strong and in every way fitted for

container liner service and other permissible cargo the service, having water ballast, winches and

donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

time (and with full complement of officers and crews, seamen engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

See also Clause 54 ............

dise, including petroleum or its products, in proper containers, excluding ............ but Charterers are to have the privilege of shipping a small number on deck at their risk

(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk in British North

all necessary fittings and other requirements to do for account of Charterers), in such lawful trades, between safe port and/or safe mud/or Gulf of Mexico and/or

America and/or United States of America and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or and/or Europe

Mexico and/or South America ............ but excluding Magdalena River, River St. Lawrence between

and/or Africa, and/or Asia, and/or Australia and/or Tasmania, and/or New Zealand, but excluding White Sea, Black Sea and the Baltic,

October–May and May–15th, Hudson Bay and all unsafe ports; also excluding out of season White Sea Black Sea and the Baltic,

*Trading worldwide always within I.W.L. via safe port(s), safe berth(s), safe anchorage(s), always afloat, always accessible, in*

*Charterers' container liner service, with lawful merchandise in ISO container only. (See Clause86)* ............

as the Charterers or their Agents shall *whilst on hire* direct, on the following conditions:

1.  That the Owners shall provide and pay for all provisions, wages and *immigration* consular shipping and discharging fees, *shore pass fees of the*

*Crew,* shall pay for insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

the vessel in a thoroughly efficient state in hull, machinery and equipment *with all international certificates for the vessel and officers/crew*

*necessary to comply with current regulations at port(s) of call and canals* for and during the service.

2.  That the Charterers, *whilst the vessel is on hire,* shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Pilotages,

*tughouts, compulsory garbage fee unless vessel has actually disposed of garbage in which case for Owners' account,* tonnages,

Agencies, Commissions,

Consular Charges (except those pertaining to *Individual* the Crew members but not for usual clearance charge which is considered as part

*of port charges, on flag of the vessel),* and all other usual expenses except those before stated *in Clause 1,* but when the vessel puts into

a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43  charter to be for Charterers account. All-other-fumigations-to-be-for-Charterers-account-after-vessel-has-been-on-charter-for-a-continuous-period
44  of-six-months-or-more.
45      Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46  Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers-to-have-the-privilege-of-using-shifting-boards
47  for-dunnage-they-making-good-any-damage-thereto.
48      3.   That-the-Charterers-shall-at-the-port-of-delivery,-and-the-Owners-at-the-port-of-re-delivery,-shall-take-over-and-pay-for-all-fuel-remaining-on
49  board-the-vessel-at-the-current-prices-in-the-respective-ports,-the-vessel-to-be-delivered-with-not-less-than .................................. tons-and-not-more-than
50  ................................. tons-and-to-be-re-delivered-with-not-less-than .................................. tons-and-not-more-than .................................. tons. See Clause 37
51      4.   That the Charterers shall pay for the use and hire of the said vessel at the rate of USD 15,000,- per day or pro rata including overtime
52  .................................. United States Currency-per-ton-on-vessel's-total-deadweight-carrying-capacity,-including-bunkers-and
53  stores-on .................................. summer-freeboard-per-Calendar-Month commencing on and from the day of her delivery, as aforesaid, and at
54  and after the same rate for any part of a day month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55  wear and tear excepted, to the Owners (unless the vessel lost) at on dropping last outward sea pilot one safe port Port Kelang / S.
56  Japan range including Taiwan / Hong Kong / China / Philippines / Indonesia / Singapore / Vietnam / Thailand, port in
    Charterers' option at any time day or night, Sundays and holidays included  unless otherwise mutually agreed. Charterers are to give Owners
    not less than 45 days about Charterers' intention and update on 30 days approximate and 15/10/5/3/1 days definite
57  notice of vessels expected date of re-delivery, and probable port. Delivery and redelivery date/time to be based on local time.
58      5.   Payment of said hire to be made in New-York-in-cash in United States Currency, semi-monthly (on 1st and 16th each month) in advance,
    payment of hire should be reconciled with Owners' debit note or invoice by fax, except for the last half month or
59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60  due, if so required by Owners, unless-bank-guarantee-or-deposit-is-made-by-the-Charterers, otherwise failing the punctual and regular payment of the
61  hire, or-bank-guarantee; or on any breach of this Charter Party, subject to Clause 41, the Owners shall be at liberty to withdraw any part of the service
    or the vessel from the service of the Char-
    terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from the date and hour of valid delivery of
    the vessel to Charterers. Time-on-the-working-day
63  following-that-on-which-written-notice-of-readiness-has-been-given-to-Charterers-or-their-Agents-before-4-p.m.;-but-if-required-by-Charterers,-they
64  to-have-the-privilege-of-using-vessel-at-once,-such-time-used-to-count-as-hire.
65      Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain upto a maximum of USD 1,000. In case higher
    amount(s) are involved, Charterers to firstly consult Owners, by-the-Charterers-or-their-Agents subject
66  to 2 1/2% commission and such advances shall be deducted from the hire against presentation of vouchers stamped/signed by Master and/or
    officers. The Charterers, however, shall in no way be responsible for the application
67  of such advances. (See also Clause 53)
        6.   That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place or anchorage that Charterers or their Agents may
69  direct, provided the vessel can safely lie always afloat at any time of tide, except-at-such-places-where-it-is-customary-for-similar-size-vessels-to-safely
70  lie-aground.
71      7.   That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72  accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73  tackle, apparel, furniture, provisions, stores and fuel. Charterers-have-the-privilege-of-passengers-as-far-as-accommodation-allow—Charterers
74  paying-Owners .................................. per-day-per-passenger-for-accommodation-and-meals.-However,-it-is-agreed-that-in-case-any-fines-or-extra-expenses-are
75  incurred-in-the-consequence-of-the-carriage-of-passengers,-Charterers-are-to-bear-such-risk-and-expense.
76      8.   That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78  agency; and Charterers are to perform all cargo handling and planning load-stow-and-trim-the-cargo at their expense under the supervision of the
    Captain, who-is-to-sign-Bills-of-Lading-for
79  cargo-as-presented,-in-conformity-with-Mate's-or-Tally-Clerk's-receipt. The Charterers or their agents should sign Bills of Lading always in
    conformity with Mate's or Tally clerk's receipts. All Bills of Lading shall be without prejudice to this Charter and the Charterers
    shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter
    and any Bills of Lading or waybills signed by the Charterers or their agents.
80      9.   That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or-Engineers, the Owners shall on
81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.
82      10.   That the Charterers are entitled shall-have-permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted
83  with the utmost despatch (See also Clause 79-Supercargo). He is to be furnished with free accommodation, and same fare as provided for Captain's table,
    Charterers paying at the
84  rate of USD 15 $1.00 per day for victualling at Captains' table. Owners to victual Pilots and Customs Officers, and-also; when authorized by Charterers
    or their Agents, to-victual-Tally
85  Clerks,-Stevedore's-Foreman, even Charterers paying at-the for all such victualling, representation and communication at actual costs
    against representation detailed vouchers current-rate-per-meal,-for-all-such-victualling. Rate per meal USD 5.- Charterers to provide
    Master in writing with their instructions as to any required entertainment/communication/victualling.
86      11.   That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, or by
87  cable/telex/fax and the
    Captain shall keep a full and correct deck and engine Log of the voyage or voyages in English language, which are to be patent and accessible to the
    Charterers or their Agents, and furnish the Char-
88  terers, their Agents or Supercargo, when required, with a true clear and legible copy of such deck and engine daily Logs in English language,
    showing the course of the vessel, weather conditions, beaufort scale and sea state, speed revolutions of main engine per minute,
89  distance run and the con-
    sumption of fuel for main engine, generations and/or auxiliary engines.

90    12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91    13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~..............................

92    ...........................................................................................................................................................................................

93    ~~on giving written notice thereof to the Owners or their Agents~~.......................~~days previous to the expiration of the first named term, or any declared option.~~

94    14. That if required by Charterers, time not to commence before *00:00 hrs 1st June 2007 local time*...........................*and should vessel* ~~can~~

95    not *have given written notice of readiness* ~~be delivered~~ *on or before 24:00 hrs 30th June 2007 local time, the Owners immediately after having got knowledge of it to inform Charterers in writing about the reasons and the right and true situation of the vessel, giving Charterers proof of same, respectively enabling Charterers to check such situation themselves. In the same message Owners to apply for a reasonable extention of the agreed cancelling date, in line with the prevailing circumstances, and Charterers to declare within 2 working days whether they agree to extend the cancelling date accordingly, or whether they select to cancel the contract* ~~but not later than 4 p.m. Charterers or~~

96    ~~their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.~~

97    15. Than in the event of the loss of time from deficiency *and/or default of and/or strike or stoppage by officers or crew or deficiency of* men or stores, fire, breakdown or damages to hull, machinery or equipment,

98    grounding, detention by average accidents to ship or cargo *unless resulting from inherent vice quality or defect of the cargo,* drydocking for the purpose of examination or painting bottom, or by any other cause *unless caused by Charterers or Charterers' agents/servants or any reasons for which Charterers are responsible,*

99    preventing the full working of the vessel, the payment of hire *and overtime, if any,* shall cease for the time thereby lost; *All fuels used by the vessel*

100    *while off-hire shall be for Owners' account,* and if upon the voyage the speed be reduced by

101    defect in or breakdown of any part of her hull, machinery or equipment, the time *actually* so lost, and the cost of any extra fuel consumed in consequence

102    thereof, and all extra *proven direct resulting* expenses shall be deducted from the hire.

103    16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

104    returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

1...    Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105    The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106    purpose of saving life and property.

107    17. ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,~~

108    ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final; and for~~

109    ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men~~ *(See Clause 51)*

110    18. That the Owners shall have a lien upon all cargoes, and all sub-freights, *sub-hires* for any amounts due under this Charter, including General Aver-

111    age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112    deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113    might have priority over the title and interest of the owners in the vessel.*(See Clause 104 - Bimco Non Lien Provision Clause)*

114    19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115    Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules ~~1 to 15, inclusive, 17 to 22, inclusive and Rule f of~~

116    York-Antwerp Rules *1974, 1994, and any subsequent latest amendments thereto, in London.- Hire not to contribute to General Average.* ~~at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these~~

117    ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~

118    ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~

119    ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~

120    ~~bond and such additional security as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~

121    ~~or his agent may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~

122    ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~

123    ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~

124    ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~

1...    ~~United States money.~~ *Charterers shall procure that all Bills of Lading issued during the currency of the Charter will contain a*

126    *provision to the effect that General Average shall be adjusted according to York-Antwerp Rules 1974, including latest subsequent amendments and will include the "New Jason Clause" as attached to this Charter Party.*

127    ~~In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

...    ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the~~

129    ~~goods, the shippers and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

13..    ~~losses, or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the~~

131    ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

132    ~~ships belonged to strangers.~~

133    ~~Provisions as to General Average in accordance with the above are to be included in all Bills of Lading issued hereunder.~~

134    20. ~~Fuel used by the vessel while off-hire, also for cooking, condensing water, or for grates and stoves to be agreed to as in quantity and the~~

135    ~~cost of replacing same, to be allowed by Owners.~~

136    21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

137    ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary at least once in every six months, reckoning from~~

138    ~~time of last painting and payment of the hire to be suspended until she is again in proper state for the service.~~

   *See Clause 99*....................................................................................................................................................................

139    ...........................................................................................................................................................................................

140    22. ~~Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons, also~~

141    ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~

142    ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for~~

143    ~~night work, and vessel to give use of electric light where so fitted, but any additional lights over those on board to be at Charterers' expense. The~~

144    ~~Charterers to have the use of any gear on board the vessel~~ *If required the vessel shall work night and day.*

145    23. ~~Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging.~~




146  ~~steamer—to—provide—one—winchman—per—hatch—to—work—winches—day—and—night—as—required, Charterers—agreeing—to—pay—officers,—engineers,—winchmen,~~
147  ~~deck—hands—and—donkeymen—for—overtime—work—done—in—accordance—with—the—working—hours—and—rates—stated—in—the—ship's—articles.—If—the—rules—of—the~~
148  ~~port,—or—labour—unions,—prevent—crew—from—driving—winches,—shore—Winchmen—to—be—paid—by—Charterers.—In—the—event—of—a—disabled—winch—or—winches,—or~~
149  ~~insufficient—power—to—operate—winches,—Owners—to—pay—for—shore—engine,—or—engines—in—lieu—thereof,—if—required—and—pay—any—loss—of—time—occasioned~~
150  ~~thereby.~~
151  ~~24.  It—is—also—mutually—agreed—that—this—Charter—is—subject—to—all—the—terms—and—provisions—of—and—all—the—exemptions—from—liability—contained~~
152  ~~in—the—Act—of—Congress—of—the—United—States—approved—on—the—13th—day—of—February,—1893,—and—entitled—"An—Act—relating—to—Navigation—of—Vessels,~~
153  ~~etc.",—in—respect—of—all—cargo—shipped—under—this—charter—to—or—from—the—United—States—of—America.—It—is—further—subject—to—the—following—clauses,—both~~
154  ~~of—which—are—to—be—included—in—all—bills—of—lading—issued—hereunder.~~
155  ~~U.S.A. Clause Paramount~~
156  ~~This—bill—of—lading—shall—have—effect—subject—to—the—provisions—of—the—Carriage—of—Goods—by—Sea—Act—of—the—United—States,—approved—April~~
157  ~~16,—1936,—which—shall—be—deemed—to—be—incorporated—herein,—and—nothing—herein—contained—shall—be—deemed—a—surrender—by—the—carrier—of~~
158  ~~any—of—its—rights—or—immunities—or—an—increase—of—any—of—its—responsibilities—or—liabilities—under—said—Act.—If—any—term—of—this—bill—of—lading~~
159  ~~be—repugnant—to—said—Act—to—any—extent,—such—term—shall—be—void—to—that—extent,—but—no—further.~~
160  ~~Both-to-Blame Collision Clause~~
161  ~~If—the—ship—comes—into—collision—with—another—ship—as—a—result—of—the—negligence—of—the—other—ship—and—any—act,—neglect—or—default—on—the—part—of—the~~
162  ~~Master,—mariner,—pilot—or—the—servants—of—the—Carrier—in—the—navigation—or—in—the—management—of—the—ship,—the—owners—of—the—goods—carried~~
163  ~~hereunder—will—indemnify—the—Carrier—against—all—loss—or—liability—to—the—other—or—non-carrying—ship—or—her—owners—in—so—far—as—such—loss~~
164  ~~or—liability—represents—loss—of,—or—damage—to,—or—any—claim—whatsoever—of—the—owners—of—said—goods,—paid—or—payable—by—the—other—or—non-~~
165  ~~carrying—ship—or—her—owners—to—the—owners—of—said—goods—and—set—off,—recouped—or—recovered—by—the—other—or—non-carrying—ship—or—her~~
166  ~~owners—as—part—of—their—claim—against—the—carrying—ship—or—carrier.~~
167  ~~25.  The—vessel—shall—not—be—required—to—enter—any—ice-bound—port,—or—any—port—where—lights—or—light-ships—have—been—or—are—about—to—be—with-~~
168  ~~drawn—by—reason—of—ice,—or—where—there—is—risk—that—in—the—ordinary—course—of—things—the—vessel—will—not—be—able—on—account—of—ice—to—safely—enter—the~~
169  ~~port—or—to—get—out—after—having—completed—loading—or—discharging.~~ *See Clause 60-Bimco Linertime Ice Clause.*
170  26.  Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171  navigation of the vessel, *physical control and operation of the vessel and all times acts of pilots and tug boats,* insurance, crew, and all other
172  matters, same as when trading for their own account.
172  27.  A commission of ~~2 1/2~~ *1.25* per cent is payable by the Vessel and Owners to *MAXMART SHIPPING & TRADING CORP.*
173  .........................................................................................................................................................
174  on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175  ~~28.  An—address—commission—of—2—1/2—per—cent—payable—to~~ ...................................... ~~on—the—hire—earned—and—paid—under—this—Charter.~~

*Additional Clause Numbers 29 to 111, both inclusive and General Average and New Jason Clause, General Clause Paramount and New Both to Blame Collision Clause as attached hereto, are deemed to be fully incorporated in this Charter Party.*

FOR OWNERS :                                                    FOR CHARTERERS :
Hermann Buss KG MS 'Elbe Trader' GmbH & Co.                    T.S. LINES LIMITED
c/o Peter Doehle Schiffahrts-KG, Hamburg                       HONG KONG
as agent to Owners

For and on behalf of Owners
as per Authority
PETER DÖHLE
Schiffahrts-KG
as Agents only

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A.), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked us having been made by the licensee or end user as appropriate and not by the author.



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

Clause 29 Inspection/Certificate at Calling Ports

Vessel's equipment shall comply with the regulations of the countries in which vessel will be employed and Owners are to ensure that vessel is at all times in possession of valid and up-to-date certificates of efficiency to comply with such regulations.

Owners are obliged to deliver and keep the vessel, her crew and anything pertaining hereto supplied with up to date and complete certificates and approvals and equipment and fitting, enabling vessel and her crew to load, carry and discharge all cargoes permitted under this Charter Party, and to receive bunkers with the trading limits of this Charter Party for oil pollution certificates. Clause 35 to apply.

If stevedores, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners and/or Owners' agents to comply with regulations, or because vessel is not in possession of such valid and up-to-date certificates of efficiency, then Charterers may suspend hire for the time thereby lost and Owners to pay all proven direct resulting extra expenses incurred incidental to and resulting from such failure.

Vessel to comply with the safety and health regulations and all current requirements at all ports of call during the currency of this charter and it is the responsibility of the Master and Owners to arrange for required vaccination/s and to keep onboard corresponding certificates.

Clause 30 Labour Boycott/ITF

In the event of loss of time due to blockade or boycott of vessel at any port or place arising from terms and conditions on which members of crew are employed, payment of hire shall cease for the time thereby lost, and Owners to pay all direct/proven expenses incurred incidentally due to and resulting from such blockage or boycott.

Owners warrant that the vessel is not blacklisted, by any country within the trading limits of this Charter Party.

Clause 31 Vessel's Light for Night Work

Vessel to provide and maintain free of expense to Charterers sufficient and efficient

1


Maxma...
Taipei

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

light, as onboard, to permit simultaneous cargo works at night at all hatches at the same time unless electrical clusters from shore are compulsory in which case same to be for Charterers' account.

Clause 32 Ballast Voyage

Owners guarantee that vessel can safely undertake voyages is ballast without carrying solid ballast, but with fuel and water ballast only.

Clause 33 Fumigation - Cargo Gear - Putting Back - Off Hire Bunkers – Crane Breakdown - Strike/Arrest

A) Fumigation - Deratization
Vessel to be delivered with valid deratization exemption certificate on board and if such does not cover the whole period on time charter and fumigation and/or deratization is necessary, cost of same and time of detention to be for Owners' account.

B) Delete

C) Putting Back/Deviation
If during the currency of this charter, vessel should put back while on voyage by reason of an accident or breakdown, or there is any deviation during the course of the voyage or any loss of time caused by sickness of or accident to crew or any person on board vessel (other than supercargo travelling under Charterers auspices) hire shall be suspended from time of her putting back until she is again in the same or, at Charterers discretion, an equidistant position and voyage resumed there from (in the event of putting back from berth or an anchorage, from time of last line at a discharging berth/anchorage until time of first line at a loading berth/anchorage), or for time actually so lost as the case may be, and cost or extra bunkers consumed and all proven direct resulting extra expenses resulting there from, if any, shall be for Owners' account.

D) Crane Breakdown
Owners during the currency of this charter to supply and maintain sufficient power on the vessel to operate vessels cranes simultaneously.



2

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

In the event of disabled crane(s), or insufficient power to operate same, vessel is to be put off-hire to the extent that time is actually lost to Charterers during loading/discharging, calculated on the basis of number of gangs being unable to work pro rata to total number of gangs needed at any time for cargo operation at each port.

If reasonably required by Charterers, Owners are to bear cost of hiring shore gear in lieu of disabled crane(s). However, in such case vessel to be considered on-hire to the extent and from such time as cargo operation has been resumed by the gang(s) affected. Hire for shore gear not to exceed vessels daily charter hire rate.

E) Strike/Arrest

In the event that vessel is delayed or rendered inoperative by strikes, labour stoppages or any other difficulties due to vessel's flag, ownership, management, registry, officers, and crew or lack of their health certificates or trading prior to vessel's coming on charter including cargoes so carried, such time lost to be considered as off-hire. Provided that the prolongation of the strike and arrest becomes unreasonable (more than 4 running days), Charterers have the right to discharge the cargo remained on board as well as arrange reloading onto any available connection vessel at the cost of Owners.

Should vessel be arrested during the currency of this charter at the suit of any person having or purporting to have a claim against or any interest in vessel, unless resulting from reasons falling under Charterers responsibilities, hire under this charter shall not be payable in respect of any period whilst vessel remains under arrest or any period during which Charterers are denied full use of the vessel. Provided that Charterers are permitted to only access part of the vessel and cargo work has been therefore hindered, the proportion of or the actual time lost should be on Owners account.

F) Bunker consumption during off-hire

The value of bunkers consumed during any off-hire period under the Charter Party shall be for Owners' account, calculated at current prices with the latest supporting voucher issued by oil company.

 

3

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

Clause 34 P&I Cover/Cargo Claim Handling

Owners guarantee that the vessel is entered and shall remain entered for the
duration of this charter, into a P&I club for full cover in respect of protection and
indemnity risks.

Charterers guarantee that they have arranged for and shall continue to have for the
duration for this charter, a full cover for time-charter liabilities.

Notwithstanding anything in this Charter Party to the contrary, it is expressly agreed,
that the Owners remain responsible for all personal injury to the extent of a full ship
Owners P&I cover. Owners to remain full P&I covered for cargo claims, for which
Owners could be made responsible under the terms of the Charter Party.

Owners however not to be responsible for any loss or damage to cargo stuffed into
containers by shippers and/or Charterers unless caused by Owners whilst cargo is
in care of the vessel.

Owners P&I Club is : Standard( total loss value : 38,4 mio €uro )

Charterers P& I Club is : UK P&I Club

Cargo claims to be settled between Charterers and Owners in accordance with the
Inter-Club New York Produce Exchange Agreement 1996.

Clause 35 Financial Responsibility in Respect of Pollution

(Pollution Charter Party Clause issued by Int. Group of P&I Clubs Sept 1996)

1. Owners warrant that throughout the currency of this charter they will provide the
   vessel with the following certificates
A) Deleted
B) Certificates issued pursuant to section 1016(A) of the Oil Pollution Act 1990. And
   section 108(A) of the Comprehensive Environmental Response, Compensation
   and Liability Act 1980, as amended, in accordance with part 138 of Coast Guard
   Regulations 33 CRF, from (indicate the earliest date upon which the Owners may
   be required to deliver the vessel into the charter or, if later, the date inserted in
   sub-paragraph (A) above), so long as these can be obtained by the Owners from

4

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
-----------------------------------------------------------------------------------

or by (identify the applicable scheme or schemes).

2. Notwithstanding anything whether printed or typed herein to the contrary;

A) Save as required for compliance with paragraph (1) hereof, Owners shall not be required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country, state or territory in performance of this charter.

B) Charterers shall indemnify Owners and hold them harmless in respect of any loss, damage, liability or expense (including but not limited to the costs of any delay incurred by the vessel as a result of any failure by the Charterers promptly to give alternative voyage orders) whatsoever and however arising which Owners may sustain by reason of any requirement to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.

C) Owners shall not be liable for any loss, damage, liability or expense whatsoever and howsoever arising which Charterers and/or the holders of any bill of lading issued pursuant to this charter may sustain by reason of any requirement to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.

3. Charterers warrant that the terms of this clause will be incorporated effectively into any bill of lading issued pursuant to this charter.

Clause 36 Delivery Notices

Owners to give Charterers 5/3/2/1 running day(s) notice of vessel's readiness to delivery under this charter and keep Charterers informed of any changes immediately they occur.

Clause 37 Bunkers on Delivery/Re-Delivery

Charterers on delivery, and Owners on redelivery, shall take over and pay for all fuel and Gas oil / MDO remaining onboard the vessel as hereunder. Bunker quantities on delivery and redelivery to be approximately the same quantity both sufficient to reach nearest main bunkers port. Bunker prices at the respective port on the date



5                                           Maxmud
                                            Taipei

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
------------------------------------------------------------------------------

delivery / redelivery to be settled at Platt's mean prices at Hong Kong on the date of delivery / redelivery respectively. On delivery, vessel has sufficient bunkers on board for safely reaching Hong Kong. Charterers intended to replenish bunkers at Hong Kong.

Expected quantities upon delivery about 570 mts HFO and about 110 mts MDO .

Bunkers cost on delivery to be paid with the second hire.

Bunkers cost on re-delivery to be deducted from the last sufficient hire payment.

Charterers shall have the option to bunker vessel for their own account prior to delivery, provided same does not interfere with Owners business.

Owners shall have the liberty to bunker vessel for their account prior to re-delivery, provided not interfering with Charterers operation of the vessel.

Clause 38 Hold Condition on Delivery - On/Off Hire Survey

A) Hold condition

Vessel's holds prior to delivery or on arrival at first load port to be clean, swept, free of infestations, odorous and cargo residues and suitable in all respects for the carriage of the maximum described intake of containers and to load any/all permissible cargoes under this charter.

In case cleaning of holds should become necessary during the currency of this charter, due to nature of cargo or cargo operations, such cleaning shall be for Charterers' account including removal of residues.

On re-delivery holds to be in about same condition as on delivery, fair wear and tear and rust excepted

Vessel is fully fitted with loose lashing, securing material for a full load of containers up to vessels nominal intake on delivery for stowing containers up to max quantity of 20/40 ft containers (see also Clause 61).

B) On/Off hire surveys

 

6

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
--------------------------------------------------------------------------------

A joint on-hire survey in delivery port, or first port after delivery, and a joint off-hire
survey in redelivery port to be held and expenses for same to be shared equally
between Owners and Charterers.

On-hire survey to be in Owners' time and off-hire survey in Charterers' time,
unless simultaneously with Charterers' operations.

Survey by an independent surveyor acceptable to both parties, to include a
statement of the lashing and securing materials on board.

Delivery and redelivery dates/times for purposes of calculating hire to be based on
local time.

Clause 39 Reporting Etc.

During voyages, Master to keep Charterers and/or their agents informed of vessel's
position and performance in accordance with the instructions received from
Charterers.
Charterers and their representative, inclusive of supercargo, to have the right to use
vessel's communication facilities.   (See Clause 61.)

Clause 40 Hire Payment

The hire is to be paid by telegraphic transfer (swift) to:

| | |
|---|---|
| Bank | HSH Nordbank |
| Bank Code | 210 500 00 |
| BIC/Swift | HSHNDEHHXXX |
| Account | 1180014900 |
| IBAN | DE51 2105 0000 1180 0149 00 |
| In favour of | Peter Döhle Schiffahrts KG |

Please also see Clause 110.

Clause 41 Late Receipt of Hire Payments

If hire has not been paid to Owners in time, Owners to notify Charterers in writing via 

7

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19ᵗʰ APRIL 2007
----------------------------------------------------------------------------

brokers and also with copy direct to Charterers on fax : 886-2-2562-3738 and give them four banking days grace to rectify such failure.

Clause 42 Deductions from Hire

Charterers shall have the liberty to deduct from last hire payments any amount disbursed for Owners account, off-hire and speed claims, previously agreed by Owners.

Chatterers have the further liberty to deduct from last sufficient hire payment, estimated cost of bunkers remaining on board on redelivery, together with a reasonable estimated amount of disbursements for Owners account outstanding, for which vouchers have not yet reached Charterers. Notwithstanding anything stipulated to the contrary in the Charter Party, no deductions other than stipulated in this clause shall be made, unless with the prior written consent of the Owners.

Clause 43 Loading Instruction

Charterers or their agents to provide Master with shippers/agents declared weight of containers, information of containers with special and/or dangerous cargo, requiring special stowage/attentions, as well as total number of containers and destination prior to commencement of loading operation each port. Charterers to be responsible for any damages, delays and expenses as may arise in port or at sea from discrepancy between manifest and actual container weight.

Clause 44 Deleted.

Clause 45 Smuggling

Owners to be responsible for any consequences owing to smuggling by vessel's officers and/or crew. Charterers to be responsible for consequences owing to any smuggling and/or possession of illegal merchandise of their servants, or hidden in the cargo.

Clause 46 Sludge

Removal of Sludge to be for Owners' account.

 

8



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

Clause 47 Deleted.

Clause 48 Deleted.

Clause 49 Outbreak of War

In the event of the outbreak of war (whether there be a declaration of war or not) between two or more of the following countries/areas and affecting vessel's trading:- Great Britain, U.S.A., Russia, Germany, Peoples Republic of China, Taiwan, Japan, both Owners and Charterers shall have the right of cancelling this Charter Party immediately and vessel shall proceed to a safe and open port at Charterers option for discharging if required, and the vessel to be redelivered thereafter.

Clause 50 Hague Visby Rules / Bimco Hamburg Rules Clause

A reference to the international convention of the unification of certain rules relating to bills of lading, dated Brussels, the 25th August 1924 and Hague Rules of as amended by the protocol signed in Brussels on the 23rd February 1988 (The Hague Visby Rules) to be inserted in all bills of lading issued hereunder.

New Jason and New Both-to-Blame Collision Clause and Clause Paramount, as applicable to apply and form part of this Charter Party and to be incorporated in all bills of lading issued hereafter.

Bimco Hamburg Rules Clause

Neither the Charterers nor their agents shall permit the issue of any bill of lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or of any sub-Charterers) incorporating where not compulsorily applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby Rules. Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

 

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
-------------------------------------------------------------------------------------

Clause 51 Arbitration : Bimco Standard Law + Arbitration Clause 1998

This contract shall be governed by and constructed in accordance with English law
and any dispute arising out of or in connection with this contract shall be referred to
arbitration in London in accordance with the Arbitration Act 1996 or any statutory
modification or reenactment thereof save to the extent necessary to give effect to the
provisions of this clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitration
Association (LMAA) terms current at the time when the arbitration proceedings are
commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to
arbitration shall appoint its arbitrator and send notice of such appointment in writing to
the other party requiring the other party to appoint its own arbitrator within 14 calendar
days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless
the other party appoints its own arbitrator and give notice that it has done so within the
14 days specified.
If the other party does not appoint its own arbitrator and give notice that is has done
so within the 14 working days specified, the party referring a dispute to arbitration may
without the requirement of any further prior notice to the other party, appoint its
arbitrator as sole arbitrator and shall advise the other party accordingly. The award of
a sole arbitrator shall be binding on both parties as if he had been appointed by
agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to
provide for the appointment of a sole arbitrator.

In case where neither the claim nor any counter claim exceeds the sum of USD50,000
(or such other sum as the parties may agree) the arbitration shall be conducted in
accordance with the LMAA small claims procedure current at the time when the
arbitration proceedings are commenced.

Clause 52 Stevedore Damages

Charterers are not to be responsible for damages to the vessel unless same are
notified in writing by the Master at the time of, or latest within 24 hours of, occurrence

10

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
--------------------------------------------------------------------------------

of damage, to Charterers or Charterers' agents or supercargo. Hidden damages
caused to the vessel during the currency of this Charter Party to be reported as soon
as discovered but latest upon completion of the respective roundvoyage. All
stevedore damages affecting vessel's class, seaworthiness and cargo carrying
capability to be repaired immediately on occurrence at Charterers' expenses.

Other stevedore damages to be repaired at next drydocking or annual repairs at
Charterers' expenses but in any case prior to redelivery.

Clause 53 Double Banking

Charterers have the privilege of ordering vessel to lie alongside in calm waters
(weather permissible), another vessel, and/or barge or river craft at a safe anchorage
in order to transfer cargo or for any other purposes provided port authorities permit.
Such operation always to be at Master's discretion and to his full satisfaction
regarding general safety. Charterers to supply all necessary fenders. Charterers to
indemnify Owners against all cargo claims subsequent to such cargo being
transferred, and against all damages sustained by such operations providing that
such claims are directly resulting of such operation. Other claims are to be settled in
accordance with Clause 34..

Clause 54 Dangerous Cargo

Charterers have the option to load containerized dangerous goods of classes 1.4S, 2
- 6.2, 8 - 9 of IMDG - Code as amended, provided these goods are in compliance with
Solas / Marpol and IMDG - Code regulations as amended.

Goods have to be labelled, placarded, stuffed, loaded, documented and carried in
compliance with vessel's certificates, regulations of port of loading, port of discharge
as well as transiting waters the vessel has to pass.

Prescribed documents relating to the carriage of dangerous goods, which in
accordance to relevant regulations are to be carried on board the vessel, are to be
delivered on board the vessel prior to commencement of loading same.

In case Charterers can supply prescribed documents to the vessel upon completion of
cargo operations only, sufficient time is to be permitted for vessel's crew to check on
proper documentation, stowage and segregation of such goods in order to fulfil

11



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

legislative requirements. Such time to be for Charterers account.

The existence of prescribed dangerous goods container packing certificates has to be confirmed by the Charterers, such documents to be delivered on board the vessel upon master's request.

A prestowage plan, indicating the locations of dangerous goods containers intended to be loaded, delivered on board the vessel prior to commencement of loading. Any deviation from prestowage plan to be reported to the vessel as soon as known by shore side personnel.

Goods of IMDG – Code class 1, other than 1.4S, goods of class 7 are to be carried only after owners prior approval being obtained which is not to be unreasonably withheld.

With regard to the permitted dangerous goods it is agreed, that any possible extra insurance and any possible extra safety
equipment, in excess of Solas requirements and required by local
regulations in vessel's ports of call or intermediate states whose waters the vessel has to pass, to be provided and paid for by the charterer.
Any time lost for not complying with said regulations to be entirely for charterers account.

Temperature controlled dangerous goods are always stuffed in prescribed reefer container for which, prior loading same, a pre trip inspection to be carried out and documented to masters satisfaction.

It is agreed that in case vessel is calling US ports, charterers DOT Hazmat registration certificate is to be used.'

The following cargoes always to remain excluded:
Livestock, nuclear and/or radioactive materials/fuels/products/wastes (unless for medical purposes and/or radio isotopes which to be allowed), toxic and/or chemical waste, arms/ammunitions (unless for sports/hunting purposes, or officially declared as government cargoes which to be allowed), explosives (except small quantities of fireworks which to be allowed), asbestos, ferrosilicon, hides, scrap, cargoes banned by United Nations, calcium hypochlorite and war/warlike materials of any kind, except

12




RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

for sport and/or hunting purpose.

Clause 55 Agents

The Charterers agree that their agents will undertake normal/minor ship's husbandry
as Owners' agents, free of agency fee, Owners only to pay for services actually
rendered.
This shall not include any extraordinary business such as : crew member desertion or
being left in hospital, general average, repairs, damage to vessel and similar major
items. In such case, Owners shall appoint their own agents for pay Charterers' agents
the relevant agent's fee.

Clause 56 Slow-Steaming

Charterers shall have the privilege of slow steaming the vessel at any speed
acceptable to vessel's machinery and hull.

Clause 57 Gangway Watchman

Watchmen for cargo/containers to be for Charterers' account. Watchmen for vessel to
be for Owners' account unless compulsory, then same to be for Charterers' account.

Clause 58 Container Clause

Securing of the cargo inside containers and/or other unit load shall be entirely the
Charterers' concern and responsibility. Any damage to the vessel, her tackle, apparel,
furniture or anything else resulting from insufficient securing of cargo within containers
and/or other unit load shall be repaired at the Charterers expense and time.
Charterers warrant that all containers will be sealed prior to loading.

Clause 59 Reefer Containers

Vessel to provide electric power as stated by vessel's description and Master/crew to
exercise due diligence in maintaining temperature and other conditions required.
Crew to monitor reefer containers twice a day. In case any malfunctions of reefer units
are found, the Master/crew shall report immediately to Charterers and try for
repair/maintenance in accordance with Charterers' instructions, provided spare parts



13



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
------------------------------------------------------------------------------

are available for such work and weather permitting. Any spare parts/time to be for
Charterers' account and crew to be considered as Charterers' servants for this task.
Owners can not be held responsible for malfunction of reefer containers provided
vessel's crew has executed the task as above mentioned with due diligence. Owners
can not be held responsible for malfunction of reefer containers unless resulting from
ships failure to supply sufficient electrical power.

Clause 60 BIMCO Linertime Ice Clause

The vessel not to be ordered to nor bound to enter any ice-bound place or any place
where lights, lightships, marks and buoys are or are likely to be withdrawn by reason
of ice on the vessel's arrival or where there is risk that ordinarily the vessel will not be
able on account of ice to reach the place or to get out after having completed loading
or discharging. The vessel not to be obliged to force ice, nor to follow ice-breakers
when inwards bound. If on account of ice the Master considers it dangerous to remain
at the loading or discharging place for fear of the vessel being frozen in and/or
damaged, he has the liberty to sail to a convenient open place and await the
Charterers' fresh instructions.
Detention through any of the above causes to be for the Charterers' account.

Clause 61 Owners Lashing Gear

Owners on delivery to supply the vessel with a full set of container lashing/securing
materials/units which to be maintained/reconditioned by the vessel throughout the
Charter period at all times for stowing containers up to maximum quantity of 20/40 FT
containers as per vessel's description.
Vessel has a full and complete set of lashing gear on board at all times during the
currency of this Charter Party.

Charterers to pay a lumpsum rate USD 700.- per month or pro rata for damaged
and/or lost loose lashing materials and to reimburse Owners for communication /
victualling / Entertainment as actual cost with supporting vouchers.

Clause 62 Errors - Notices Between Parties

To offset errors, Owners or Charterers to give each other at least 48 hours
substantiated written notice before exercising their rights under this Charter Party.

14

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

**Clause 63 Vessel's Plan**

Owners shall to provide General Average, capacity plans and a complete set of copies of all vessel's certificates to Charterers.

**Clause 64 Non-Containerized Cargoes**

It is understood that Charterers will. employ the vessel in the container trade. Charterers to have the option to also load lawful general breakbulk allowed for a cellular full-container vessel, provided complying fully with IMO and other relevant regulations and always subject to master prior permission. Any extra insurance and/or any extra expenses and/or loss of time to be for Charterers' account. Any deck cargo to be loaded at Charterers risk and expenses but always as far as vessels' stability permits. Relative extra insurance to be for Charterers' account. In case of deck stowage Bills of Lading to be claused accordingly. - (See Clause 98)

**Clause 65 Due / Taxes**

All dues and taxes on cargo and/or freight/vessel or levied against vessel due to her having cargo on board to be for Charterers' account (except income tax levied in the country of the vessel and/or her Owners domicile which to be for Owners' account).

Any taxes / fees that may be levied on the Charter-Hire by any country or authority, other than income tax and/or other levies/taxes/fees that are normally payable by Owners in the country of vessel's/Owners' domicile and/or registry or residence, shall not be for Owners' account.

**Clause 66 Container Handing Experience**

Master, chief officer and cargo officer to have container handling experience.

**Clause 67 Quarantine Time / Expenses Etc.**

Normal quarantine time and expense to enter the port to be for Charterers' account but any time of detention and expenses for quarantine due to pestilence, illness, etc. of Master, officers and crew to be for Owners' account.

15

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

it is the responsibility of the Master and the Owners to arrange for vaccinations required for ports of call/trading area where vessel is employed to keep on board corresponding, valid certificates.

Any additional quarantine expenses or time due to Charterers having traded vessel to places considered unhealthy and as a result thereof requiring additional quarantine expenses or waiting time or additional vaccination of crew, as subsequent ports of call, shall be for Charterers' account.

Clause 68 Stowaway Clause - BIMCO Stowaways Clause

A) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the vessel by means of securing away in the goods and/or containers shipped by the Charterers.

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the vessel shall remain on hire.

(iii) Should the vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (A)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the vessel is released and at their expense to put up bail to secure the release of the vessel.

(B) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the vessel by means other than securing away in the goods and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the vessel shall be off hire

(ii) Should the vessel be arrested as a result of stowaways having gained access to



16



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

--------------------------------------------------------------------------------

the vessel by means other than securing away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the vessel is released and at their expense put up bail to secure release of the vessel.

Clause 69   CONWARTIME 2004 Clause

BIMCO Standard War Risks Clause for Time Charters, 2004
(Code Name: CONWARTIME 2004)

(a)  For the purpose of this Clause, the words:

(i)  "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii)  "War Risks" shall include any actual, threatened or reported:
war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b)  The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c)  The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively

17

 Masman Taipei

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

In any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

(d)  (i)  The Owners may effect war risks insurance in respect of the Hull and  Machinery of the Vessel and their other interests (including, but not  limited to, loss of earnings and detention, the crew and their protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(ii)  If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e)  If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the  actual bonus or additional wages paid shall be reimbursed to the Owners  by the Charterers at the same time as the next payment of hire is due, or  upon redelivery, whichever occurs first.

(f)  The Vessel shall have liberty:-
(i)  to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii)  to comply with the order, directions or recommendations of any war  risks underwriters who have the authority to give the same under the  terms of the war risks insurance;

18




RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

(iii) to comply with the terms of any resolution of the Security Council of the United
Nations, the effective orders of any other Supranational body which has the right to
issue and give the same, and with national laws aimed at enforcing the same to which
the Owners are subject, and to obey the orders and directions of those who are
charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the
Vessel liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons
on board the Vessel when there is reason to believe that they may be subject to
internment, imprisonment or other sanctions.

(g) If in accordance with their rights under the foregoing provisions of this Clause,
the Owners shall refuse to proceed to the loading or discharging ports, or any one or
more of them, they shall immediately inform the Charterers. No cargo shall be
discharged at any alternative port without first giving the Charterers notice of the
Owners' intention to do so and requesting them to nominate a safe port for such
discharge. Failing such nomination by the Charterers within 48 hours of the receipt of
such notice and request, the Owners may discharge the cargo at any safe port of
their own choice.

(h) If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause
anything is done or not done, such shall not be deemed a deviation, but shall be
considered as due fulfilment of this Charter Party.

Clause 70 Deleted.

Clause 71 Through and House-To-House Containers

Charterers to keep Owners harmless for any additional expenses and/or damage to
containers and/or cargo if through or House-to-House Bills of Lading are signed, if
damage/additional expenses occur after actual discharging from or prior to loading on
the vessel.

Clause 72 Option of Premature Termination




19

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

Should the vessel during the performance of this Charter be off-hire for a period of more than twenty-one (21) consecutive days, Charterers have the option to terminate this Charter Party at the place where it occurs and vessel shall proceed to a safe port at Charterers' option for discharging if required. Vessel can be redelivered only in case vessel is empty.

Owners shall have no obligation from Bills of Lading issued under the Charter Party when Charter is terminated. However Owners shall pay for the costs of discharging cargo from the terminated vessel and hence reloading the same onto the connecting vessel plus local extra customs' levy/ies imposed on the cargo for change of the carrier. Charterers shall provide Owners all original vouchers evidencing such payments."

During to currency of this Charter Party, the vessel is to be trading on Charterers' container service and it is imperative that the vessel has to keep to schedule. Should the vessel be persistently delayed by engine breakdowns and/or other causes affecting her schedule (it being understood that such causes as grounding, collision, or similar cases are excluded) Charterers shall notify Owners who shall take all reasonable and necessary steps to rectify problems.

Clause 73 Weather Routing

Charterers may supply oceanroutes advice to the Master, during voyages specified by the Charterers. The Master to comply with the reporting procedure of the routing service selected by Charterers, unless Master considers route as not safe.

Clause 74 Inventory of Charterers' Equipment

The Master, as far as possible, to keep a record of all Charterers' gear, equipment and/or stores supplied to the vessel and to maintain same in good condition. Such gear, equipment, and/or stores to be redelivered to Charterers prior to redelivery of vessel to Owners or, if required by Charterers, at any time during the period of the Charter, in like good order and condition as supplied (ordinary wear and tear excepted). Owners to make good any shortage and/or damage unaccounted for, unless caused by negligence of Charterers, their servants or agents.

20

 

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
-----------------------------------------------------------------------------------------------------

Clause 75 Extra Insurance

Any extra insurance on the vessel itself owing to vessel's age, class and/or flag,
ownership or management to be for Owners' account.

Clause 76 Container Loading

Charterers have the option to load in and/or on all hatches empty and/or full
containers but in agreement with the Master with reference to the strength of the
hatches and the stability at the vessel and Clause 83. The crew, as far as weather
conditions permit, to daily watch the conditions of the containers carried and relash
same or tighten the lashings whatever may become necessary during the voyage.

Clause 77 Crew Assistance

Time Charter hire to include but not to be limited to following works and rendering
customary assistance by the crew, provided allowed by local authorities / regulations /
unions.

A) To get the vessel always ready for cargo work to avoid wasting time in any case.
B) Check stevedore's lashing and unlashing as far as practicable as Charterers
    servants.
C) Shifting operation and docking.
D) Bunkering.
E) Maintaining power while loading and/or discharging
F) Supervision/enabling stevedores to perform the cargo operations.
G) Instruct stevedores how to handle vessel's equipments while necessary.
H) To prepare vessel's hatches/holds and all lashing/securing materials properly on
    deck and/or in holds prior to arrival to ports or commencement at operations.
I) To pay due attention to the cargo on board throughout the voyage
J) Cooling and ventilation instructions for reefer containers to be given in writing by
    Charterers to the Master prior to loading.

Clause 78 Deleted.

Clause 79 Supercargo



21



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

In reference to Clause 10 of this Charter Party, the Owners to provide a clean and acceptable room available for the supercargo, furnished to the same standard of other Officers' cabins on board the vessel. Having also a writing table available.

The Charterers supercargo/representative to be afforded every courtesy and co-operation of the vessel's command and to have free and unlimited access to the whole vessel including bridge, holds and engine room, and also to vessel's tanks including but not limited to bunkers, lubricating oil, sludge, ballast and freshwater tanks. Also to the vessel's deck and engine logbooks made during the charter period. Tank plans, calibration scales and/or other plans as requested/required. Prior to joining the vessel Charterers supercargo is to sign Owner's L.O.I. presented by master.

Clause 80 Deleted.

Clause 81 Deleted.

Clause 82 Deleted.

Clause 83 Description of Vessel

m/v " elbe trader "
geared container vessel
container intake:

      1,600 units 20'x8'x8'6"

    stowage :
      holds:    586 x 20' x8' x8'6" - 5 tiers
      deck : 1,014 x 20' x8' x8'6" - 6 tiers
      or
      holds:    300 x 20' x8' x9'6" + 286 x 20' x8' x8'6"
      deck :    810 x 20' x8' x9'6" +   20 x 20' x8' x8'6"
alternatively :   766 units 40'x8'x8'6" + 54 units 20'x8'x8'6"
    stowage :
      holds:    282 x 40' x8' x8'6" + 18 x 20' x8' x8'6"
      deck :    484 x 40' x8' x8'6" + 36 x 20' x8' x8'6"
      or
      holds:    145 x 40' x8' x9'6"

22




RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

--------------------------------------------------------------------------------

deck :    388 x 40' x8' x9'6"
deck :    180 x 45' x8' x9'6,5"

clearance under deck
hold 1 (bay 02)    1 x 8'6" + 3 x 9'6"
hold 1 (bay 06)    3 x 8'6" + 3 x 9'6"
h.2 +3              3 x 8'6" + 2 x 9'6"
hold 4              2 x 8'6" + 3 x 9'6" with total 300 x20'x8'x9'6"
                          plus     286 x20'x8'x8'6"

stability abt 1124 units of 20ft a 14 mto homogenous
intakes always subject to vessel's stability, trim, deadweight/ permissible stack
weights and subject to regulations of visibility incl. passage through panama canal
container capacity is reduced.

permissible stack weights:
cargohold (tanktop)        :    24 mto per 20ft container
                                35 mto per 40ft container

hatches :
        bay   33 and 35      :  70   mto per stack (20 ft cont)
        bay   9 until 31      :  60   mto per stack (20 ft cont)
        bay   1 until 7       :  50   mto per stack (20 ft cont)
        bay   10 until 34     :  90   mto per stack (40 ft cont)
        bay   2 until 6       :  80   mto per stack (40 ft cont)
        bay   10,22,26,30     :  90   mto per stack (45 ft cont)
        bay   2               :  80   mto per stack (45 ft cont)

distribution of container-weights within a single 20'/40' stack to comply with the board
manual for stowage and lashing of containers approved by the classification society.

the ship is constructed to carry and handle containers in accordance with iso norm
only. the ship is presently fitted with lashing material in accordance with u.s. osha
rules. detailed information on corresponding permissible stackloads of the individual
container stacks and the method of stowing and lashing the containers are shown in
the class approved 'container securing manual'



23

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
--------------------------------------------------------------------------------

dangerous cargo:
THE VESSEL IS EQUIPPED TO LOAD DANGEROUS CARGO IN CONTAINERS.
DETAILS ARE ACCORDING TO THE VESSEL'S CERTIFICATE OF COMPLIANCE
AND THE RELEVANT CHARTER PARTY CLAUSE(S).
fittings:
fully cellularized in holds for 40' units, alternatively 2x20' units can be stowed into
each 40'-compartment. vessel fully fitted with loose lashing material/fittings/stacking
cones for 20', 40' and 45' units under and on deck.

reefer containers:
200 reefer plugs, on deck, 440 v, 60 cycle, earth pin position 3 hrs

IF CHARTERERS ARE LOADING IN 3RD TIER OR ABOVE OR OUTER DECK
ROWS IN THOSE POSITIONS NO MANUAL REEFER MONITORING & NO
REPAIRS OF REEFERS BY CREW.

single decker          :   abt. 22.525 tdwat sfb abt. 10,82 m
gross tonnage          :   15.895
net tonnage            :   9.227
suez canal tonnage     :   16.657,07 brt
panama canal tonnage   :   13.314 pc/ums net

class:   g.l. + 100 a 5 e containership   solas II-2, reg. 19
         iw nav-oc + mc e aut
official no: 2415
no. of port registry : ssr 4486 / 1994
imo/lloyd's reg. no: 9080522

engine/bridge aft
antigua flag (owners have the option to change vessels flag) blt 11/1994 at mtw
wismar yard

speed and consumption (main engine output 90 o/o) :
all figures about and based on c.w.l. (construction water line = abt 9,7 m draft = abt
18.230 tdw), calm sea and wind max. beaufort 2 / dss 2 and maximum sea
temperature 28 degr celcius.




24

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
--------------------------------------------------------------------------------------------

about 21,00 knots at 90 pct mcr excl shaftgenerator m/e consumption of about 60,5
mts/day fuel ifo 380cst / 50c, at 90 pct mcr (13986 kW)

no mdo at sea provided shaftgenerator connected, no reefers carried and without hold
ventilation used, except in case of emergency and/or navigation with reduced speed
and/or in restricted areas like approaches, shallow waters, etc.

charterers to provide sufficient quantity of mdo during seapassages for operating
auxiliaries/generators in case of an emergency.

port consumption
abt 2,6 mts mdo per day excl. reefers, and cranes abt 3,9 mts mdo per day excl.
reefers, but incl. cranes working
vessel consuming bunkers in port for pre-heating (fuel oil/main engine etc.)

the fuel oil supplied to be in accordance with iso fuel standard 8217 : 2005 (e) RMG
380 or any later amendment thereto.

the marine diesel oil supplied to be in accordance with iso fuel standard 8217 : 2005
(e) DMB s.w. max 0,89, or any later amendment thereto.

1. calculated carbon aromatic index (ccai) max. 860 2. sodium contens less than 1/3
of vanadium content (content in ppm) 3. max. sodium content 100 ppm 4. asphaltenes
content less than 2/3 of conradsen carbon number (ccr) 5. the fuel consumption rates
are based on iso conditions and net calorific value of fuel of 42,700 kj/kg (tolerance 3
pct)

charterers shall supply suitable fuel to enable main propulsion and auxiliary
machinery to operate efficiently and without harmful affects, fuels to contain no waste
lubricants or chemicals.

the charterers shall supply heavy fuel/marine diesel oil/gasoil of such specifications
and grades to permit the vessel, at all times, to meet the requirements of any zone
regulated by regional and/or national authorities when the vessel is trading within that
zone.

25

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

all fuel delivered to the vessel has to be a mineral oil product and shall not contain
taroil and / or inorganic acid substances and to be of stable and homogen nature.


vessel will participate in a fuel quality testing programme. samples will be taken during
each bunkering. costs involved in the amount of about usd 350,— per sample to be
equally shared between owners and charterers.


main engine/auxiliaries:
sulzer 7 rta 58 62 u, mcr 15.540 kw at 113 rpm
                               13.986 kw at   90 pct mcr


1 shaftgenerator          1.440 kw (1800 kwa)
3 dieselgenerators        880 kw each (1100 kwa)
1 fixed propeller         6.30 m diameter
1 bowthruster             800 kw, 11,2 t thrust


8 hatches/ 4 holds
no 1      : 12.43 x 12.86 m
no 2 - 8  : 12.43 x 22.86 m

hatch covers:
macgregor navire pontoon type hatch covers, each hatch 3 pontoons athwardship =
non - sequential opening =


gear:
3 cranes of 40 mts swl

        loa      :   abt.   167,97   m
        lpp      :   abt.   156,00   m
        beam     :   abt.   26,70    m
        depth    :   abt.   14,40    m
        draught  :   abt.   10,82    m

tank capacities:





26

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
-----------------------------------------------------------------------------------------------------------

| hfo | abt | 1.650 | cbm |
| mdo | abt | 230 | cbm |
| ballast water | abt | 6.079 | cbm |
| fresh water | abt | 180 | cbm |

about 98 pct filled

cruising range:   abt 12.000 nautical miles at 90 pct mcr.

vessel not to force ice, nor to follow ice breaker.

vessel has no spreader on board.

all details and figures are 'about' except fuel specifications and are given by owners in good faith but without guarantee.

Clause 84 Captions of Clauses

The caption and headings of clauses herein are inserted for convenience only and shall not be construed to have any restrictive effect on the text herein.

Clause 85 Strikes Pilot / Tug Boats Etc.

Owners not to be responsible for any loss of time or other consequences/expenses resulting from any strike of pilots, tug-boats, linesmen, or other shore labour. Unless resulting from vessel's/Owners failure to comply with the terms of this Charter Patty or being caused by reason of Owners' side.

Clause 86 Trading Exclusions

The vessel shall be employed in lawful trades within IWL for the carriage of containerized lawful goods between safe and icefree ports/berths and places where she can safely lie always afloat excluding USA, Denmark, Norway, Sweden, Finland, Iceland, Greenland, Faroer Islands, Great Lakes, St. Lawrence, Cuba, Haiti, Turkish occupied part of Cyprus, Libya, Liberia, Israel, Yemen, Iraq, Iran, Myanmar (formerly Burma), Somalia, Ethiopia, North Korea, CIS pacific ports, Australia/New Zealand and countries which result in blacklisting/sanctions by other countries and/or United Nations.

27



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

No direct trading between China mainland and Taiwan and vice versa. Unless the China & Taiwan government rescind the prohibition.

Clause 87 Reinsertion In Trading Limits

If is agreed that, from time to time, should the political/trading situation change, the Charterers can ask for reinsertion in trading limits of an excluded country and the Owners can ask for insertion of another excluded country. Both parties agree not to unreasonably withhold their consent, but Owners reserve their rights to maintain trading status as per governing Charter Party terms.

Clause 88 Deleted.

Clause 89 Deleted.

Clause 90 Deleted.

Clause 91 Off-Hire

After suspension of hire, from any cause, the vessel shall be placed again at Charterers' disposal at the same port, or place, or an equidistant position where hire was suspended, except at sea.

Charterers may, however, in their option accept the vessel on hire again in such position and at such time as the vessel may again in all respects be ready to comply with the orders and directions of the Charterers.

During any off-hire period estimated to exceed 7 days, the Owners to give the Charterers not less than 3 (three) days definite notice of resumption of the service.

Clause 92 War Risk Insurance

The Owners warrant that the vessel shall remain insured throughout this Charter Party against basic war risks with the insurance company as stated in the description clause at Owners' expenses.

Any additional war risk insurance premiums for trading to areas declared as additional

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
-------------------------------------------------------------------------------------

premium areas by underwriters to be for Charterers' account.

Clause 93 Deleted.

Clause 94 Deleted.

Clause 95 Deleted.

Clause 96 Change of Flag / Registry / Sale of Vessel

Owners have the right to change the vessel's flag and/or registry and/or to sell the
vessel. Provided the warranties under the terms of this Charter Party remain
unaffected.

Clause 97 Stowage / Supervision

The Master shall supervise stowage of the cargo as well as instruct one of his officers
to supervise all loading, handling and discharge of cargo. Master is not requested to
do the stowage planning but to supervise stowage of cargo.

Clause 98 Deleted.

Clause 99 Drydocking

No drydocking during the currency of this Charter, except in cases of emergency, or if
otherwise agreed between the parties.

Clause 100 Deleted.

Clause 101 Registration for Transport of Hazardous Materials

Charterers warrant that they have filed a registration statement with the United States
Department of Transportation, Research and Special Programs Administration (RSPA)
for certain persons engaged in the offering for transportation and transportation of
certain hazardous materials in foreign, intrastate or interstate commerce in
accordance with the hazardous materials transportation uniform safety act of 1990
(HMTUSA) and will remain so during the duration of this charter. Charterers to be

29





Maxman
Taipei

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

responsible for all permits and registration for/of hazardous and IMO cargoes necessary to enter and/or trade in and out of all ports during the currency of this charter and shall indemnify Owners and hold them harmless in respect of any loss, damage, liability or expense (including fines) imposed on Owners and/or vessel due to nonfulfilment of the requirements of the RSPA.

Clause 102 Insured Risks

Owners to keep the vessel fully insured against all hull risks as per institute time clause (HULLS) 1.10.1983 including RDC or equivalent conditions and usual deductibles.

Clause 103 Deleted.

Clause 104 BIMCO Non-Lien Provision Clause

Charterers will not suffer, nor permit to be continued any lien or encumbrance incurred by them or their agents which might have priority over the title and interest of the Owners in the vessel.

In no event shall Charterers procure, or permit to be procured, for the vessel, any supplies, necessaries or services without previously obtaining a statement signed by an authorized representative of the furnisher thereof, acknowledging that such supplies, necessaries or services are being furnished on the credit of the Charterers and not on the credit of the vessel or of her Owners, and that the furnisher claims no maritime lien on the vessel therefore.

Clause 105 Oil Spillage

Charterers will not be held responsible for oil pollution or pollution damage caused by the vessel if the pollution or damage do not arise out of Charterers' acts or due to Charterers' faults.

Clause 106

Master upon Charterers request to self-pilot in/out at Japanese ports/channels/straits, if master is qualified for self pilotage in such water, unless pilots are compulsory, and

30



RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
------------------------------------------------------------------------------------------------

always provided such self-pilotage is safe (such decision always to be in Master's
discretion).

Clause 107

Notwithstanding the agreed trading limits it is clearly understood that
Owners/Charterers do not waive their rights to rely on CONWARTIME 2004 War
Clause as included in this Charter Party

Clause 108   BIMCO Bunker Fuel Sulphur Content Clause for Time Charter
Parties 2005

(a) Without prejudice to anything else contained in this Charter Party, the Charterers
shall supply fuels of such specifications and grades to permit the Vessel, at all times,
to comply with the maximum sulphur content requirements of any emission control
zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and
bunker surveyors used by the Charterers to supply such fuels shall comply with
Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of
sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of
any loss, liability, delay, fines, costs or expenses arising or resulting from the
Charterers' failure to comply with this Sub-clause (a).

(b) Provided always that the Charterers have fulfilled their obligations in respect of the
supply of fuels in accordance with Sub-clause (a), the Owners warrant that:

(i) the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with
the requirements of any emission control zone; and
(ii) the Vessel shall be able to consume fuels of the required sulphur content when
ordered by the Charterers to trade within any such zone.

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a),
the Charterers shall not otherwise be liable for any loss, delay, fines, costs or
expenses arising or resulting from the Vessel's failure to comply with Regulations 14
and 18 of MARPOL Annex VI.

31

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

(c) For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

Clause 109

Vessel should be in compliance with ISM CODE.

Clause 110

Banking charge if any incurred from remitting bank to be for Charterers' account, if any incurred out of remitting banking to be for Owners' account.

Clause 111    Funnel mark / renaming clause

The Charterers shall have the liberty to paint the funnel with their own colours. Also, if desired, they have the liberty to paint insignia on vessel's sides. Expenses and time in this connection including changing back to Owners' colours prior to redelivery to be for Charterers' account.

The Charterers shall have the option to rename the vessel. Any expenses/fees and any loss of time in connection with naming and subsequent renaming to any name in Owners' option prior redelivery of the vessel to be for Charterers' account, including expenses for painting, certificates, authority fees etc.. Any claims and connected extra expenses resulting from the charter-name to be for Charterers' account, including Owners legal fees.

GENERAL AVERAGE AND THE NEW JASON CLAUSE

General Average shall be adjusted, stated and settled according to the York/Antwerp Rules 1994, or any subsequent modification thereof, in London, in accordance with the law and practice of the United Kingdom, the following clause shall apply : -





RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or Owners of the goods to the carriers before delivery.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

### GENERAL CLAUSE PARAMOUNT

The International Convention for the unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 24 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.

Where there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract.

The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979")

33





RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

---

shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.

The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or while the cargo is in the charge of another carrier, or with respect to deck cargo and live animals.

## NEW BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply: -

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of this vessel, the Owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non- carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Owners of said cargo, paid or payable by the other or non-carrying ship or her Owners to the Owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier."

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

And the Charterers shall procure that all Bills of Lading issued under this Charter party shall contain the same clause.

## BIMCO ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005

(a)(i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States

34

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007
----------------------------------------------------------------------------------------------

waters, the Owners shall also comply with the requirements of the US Maritime
Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as
defined by the MTSA).

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant
International Ship Security Certificate (or the Interim International Ship Security
Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages,
expense or delay) caused by failure on the part of the Owners or "the
Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this
Clause shall be for the Owners' account, except as otherwise provided in this Charter
Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style
contact details and, upon request, any other information the Owners require to comply
with the ISPS Code/MTSA. Where sub-letting is permitted under the terms of this
Charter Party, the Charterers shall ensure that the contact details of all sub-charterers
are likewise provided to the Owners and the Master. Furthermore, the Charterers
shall ensure that all sub-charter parties they enter into during the period of this
Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and,
where sub-letting is permitted under the terms of the charter party, shall ensure that
the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Loss, damages, expense or delay (excluding consequential loss, damages,
expense or delay) caused by failure on the part of the Charterers to comply with this
Clause shall be for the Charterers' account, except as otherwise provided in this
Charter Party.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or
expenses whatsoever arising out of or related to security regulations or measures
required by the port facility or any relevant authority in accordance with the ISPS
Code/MTSA including, but not limited to, security guards, launch services, vessel
escorts, security fees or taxes and inspections, shall be for the Charterers' account,
unless such costs or expenses result solely from the negligence of the Owners

35

RIDER CLAUSES TO M.V. ELBE TRADER tbr TS MANILA / TSL
CHARTER PARTY DATED 19th APRIL 2007

---

Master or crew. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

*Footnote: This Clause replaces previously published ISPS Clause for Time Charter Parties AND the US Security Clause for Time Charter Parties, both of which are now officially withdrawn.*

### Ports to Comply with ISPS Code

Charterers guarantee that the ports to which they direct the vessel, comply at all times while the vessel is at the port, with all requirements of the ISPS Code. Owners are entitled to refuse to proceed to a port not complying with the ISPS Code. All costs and consequences arising from or in connection with calls at ports not complying with the ISPS Code to be for Charterers' account.

= END =

36





070827-01696137                                                                    User: HH

      To: chartering@gbshipping.de <chartering@gbshipping.de>
    From: Doehle Operating <operation@doehle.de>
 Subject: TS Manila
  Attach: SCAN3956_000.pdf
    Date: 27.08.2007 11:03:27    (printed 28.08.2007 11:49:45)
Heino / Susann

Re: MV TS Manila
------------------------
Anbei erhaltet Ihr bitte eine vollständig unterzeichnete Kopie der Charter Party für
Eure Unterlagen.

Viele Grüße,

Susann Froehlich
- Operations Department -
Peter Doehle Schiffahrts - KG
-------------------------------
Phone: +49 - 40 - 38 108 227
Fax:    +49 - 40 - 38 108 298
Mobile: +49 - 179 - 519 76 08
E-mail: operation@doehle.de